UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------ X
                                     :
EARL FORSYTHE,                       :
                                     :
                        Plaintiff,   :          10 Civ. 2549 (KBF)
                                     :
        -v-                          :
                                     :          MEMORANDUM OPINION
AMALGAMATED WARBASSE HOUSES, INC.,   :             & ORDER
                                     :
                        Defendant.   :
                                     :
------------------------------------ X

------------------------------------ X
                                     :
EARL FORSYTHE,                       :
                                     :
                        Plaintiff,   :          10 Civ. 4609 (KBF)
                                     :
        -v-                          :
                                     :          MEMORANDUM OPINION
LOCAL32BJ, SEIU,                     :             & ORDER
                                     :
                        Defendant.   :
                                     :
------------------------------------ X

```
                                            USDC SDNY
                                            DOCUMENT
                                            ELECTRONICALLY FILED
                                            DOC #:_____
                                            DATE FILED: APR 2 7 2012
```

KATHERINE B. FORREST, District Judge:

        Plaintiff Earl Forsythe, appearing in these actions pro se,
was employed as a porter by Amalgamated Warbasse Houses, Inc.
("Amalgamated") for a period of less than three years.  During
that time, he received nine disciplinary notices relating to his
job performance and was suspended on two occasions.  He then
brought two children to work and left them unattended.  Together

with his disciplinary history, that event led to Mr. Forsythe's termination.

During the time that plaintiff was employed by Amalgamated, he was a member of Local 32BJ, SEIU ("Local 32BJ").  Following his termination, and having filed one previous lawsuit against Local 32BJ — which suit was later dismissed for failure to state a claim — he filed these actions.[1]

Plaintiff commenced his action against Amalgamated in March 2010, alleging that his termination was retaliatory and motivated by discrimination on account of his race (African American) and national origin (Trinidadian).  He commenced his action against Local 32BJ in June 2010, alleging, inter alia, a violation of the union's duty of fair representation, by virtue of its decision not to present his termination grievance for arbitration.

These cases arise from the same set of events and circumstances and have progressed in a coordinated fashion before the Court.  They were transferred to the undersigned in November 2011.  At a conference in December 2011, defendants in both actions indicated that they intended to move for summary

---

[1] In July 2009, plaintiff filed an action, 09 Civ. 8469 (SHS)(RLE), against Local 32BJ asserting that the union had violated the Labor-Management Reporting Disclosure Act ("LMRDA") by failing to pursue grievances he had filed against another employer, AlliedBarton Security.  Judge Stein granted Local 32BJ's motion to dismiss the complaint in its entirety in September 2010. (Docket No. 38, 09 Civ. 8469 (SJS)(RLE); aff'd Docket No. 42 (2d Cir. May 23, 2011).)

judgment, and this Court set a briefing schedule that had the
motions fully briefed at the end of March 2012.  During the
December conference, the Court explained to Mr. Forsythe that
such motions could be dispositive of his cases and that he would
need to respond to any factual assertions and evidence put
forward by defendants with a counter-statement of facts and
supporting materials.  (See Docket No. 19, 10 Civ. 2549; Docket
No. 28, 10 Civ. 4609.)  On January 23, 2012, defendants served
separate notices on plaintiff in which they stated clearly that
they were seeking judgment on his claims and that, in order to
defeat such a motion, he would need to submit supporting facts.

Defendants submitted a joint statement of uncontested facts
pursuant to Local Rule 56.1 and extensive factual materials in
support of their motions for summary judgment.  Those materials
are properly before this Court on this motion and include, inter
alia, portions of the multi-day deposition of plaintiff.
Despite warnings from the Court and the clear notices sent by
defendants, plaintiff failed to submit a counter-statement to
defendants' 56.1 submission.  In opposition to defendants'
motions, plaintiff submitted a brief, a notarized affidavit, two
declarations from other individuals regarding their own personal
claims that are unrelated to plaintiff's particular
circumstances, a copy of the letter terminating his employment
on July 23, 2009, photocopies of photographs taken of

plaintiff's work area that he had alleged were improperly included in his file (and showing his work area in disarray), and other miscellaneous materials relating to his union complaints, grievances and the appeal process.  Not a single one of plaintiff's attachments creates a material issue of fact.

For the reasons set forth below, defendants' motions for summary judgment are GRANTED in their entirety, and plaintiffs' actions are dismissed with prejudice.

FACTS

Joseph Loscalzo is the Maintenance Director at Amalgamated. (Joint 56.1 Statement ("56.1") at ¶ 8.)  In October 2006, he hired plaintiff Forsythe to work as a porter in the Amalgamated buildings.  (Id. ¶ 17.)  Amalgamated currently employs 28 porters, of whom 22 are of the same race as Mr. Forsythe. (Id. ¶¶ 9-10.)  Two of those porters, both of whom are also African American, were hired after plaintiff's termination.  (Id. ¶ 11.)

As a porter, plaintiff's job responsibilities included handling the garbage and recycling in the compactor rooms and back hallways of his assigned building.  (Id. ¶ 20.)  He was assigned to work Sunday through Thursday, from 7:00 a.m. to 4:00 p.m. (Id. ¶ 22.)

Amalgamated had a collective bargaining agreement ("CBA") with Local 32BJ. (Id. ¶ 24.)  That CBA had terms and conditions with which Amalgamated agreed to comply with respect to each

4

unionized employee, including plaintiff.  (Id.)  Pursuant to the
CBA, employees may not be terminated except for just cause.
(Id. ¶ 25.)  If an employee believes that Amalgamated has
violated the terms of the CBA with respect to him, he must
contest that violation using the grievance and arbitration
procedures set forth in the CBA.  (Id. ¶ 26.)  The CBA provides
for a 45-day time limit from the date of the incident for filing
disciplinary grievances.  (Id.)

Mike India is employed by Local 32BJ as a grievance
representative and has, since 2007, been the grievance
representative for the unionized building service employees at
Amalgamated.  (Id. ¶ 28; India Decl. ¶ 4.)  When a unionized
employee files a grievance, the union's grievance representative
conducts an investigation to determine whether the grievance has
sufficient merit to proceed to arbitration.  (56.1 ¶ 30; India
Decl. ¶¶ 1-2.)  The representative then determines whether to
recommend that the union arbitrate the grievance.  (See 56.1
¶ 32.)  If the Union declines to arbitrate a grievance, an
employee may file an appeal of that decision to the Grievance
Appeal Board ("GAB").  (Id.)  Plaintiff conceded at his
deposition that he knew, from the time he commenced employment
at Amalgamated, that he could file a grievance with Local 32BJ.
(Id. ¶ 33 (citing Forsythe Dep. 580:6-10).)  In fact, plaintiff
filed four grievances relating to various disciplinary notices,

5

his suspension and his termination.  (56.1 ¶ 34.)  None of those grievances were arbitrated, including the one related to plaintiff's termination.  Mr. India recommended that Mr. Forsythe's termination grievance not be arbitrated. (Id. ¶ 120.)

Within a few months of commencing his employment with Amalgamated, plaintiff received his first warning letter relating to his job performance.  (Id. ¶¶ 41-47.)  That letter stated that plaintiff had failed to perform certain assigned tasks and had failed to follow his supervisor's instructions. (Id. ¶ 41; see also Auletti Aff. Ex. B.)  Plaintiff did not file a grievance regarding that warning letter. (56.1 ¶ 47.)  At his deposition, plaintiff did not deny that he had, in fact, done or failed to do what was asserted in the warning letter.  (Id. ¶¶ 42-45.)  A second warning letter followed a few months later. That letter recited that plaintiff had repeatedly failed to arrive to work on time and warned him not to ride his bike during work hours.  (Id. ¶¶ 48-52; see also Auletti Aff. Ex. C.) At his deposition, plaintiff conceded that he had ridden his bike during work hours as alleged in this warning letter.  (56.1 ¶ 49.)  Plaintiff did not file a grievance regarding that warning letter.  (Id. ¶ 52.)

One month later, plaintiff received a third warning letter — also for unsatisfactory work performance.  (Id. ¶ 53.)

According to that letter, plaintiff had again failed to perform certain assigned tasks and had failed to complete assigned tasks by the end of his shift.  (Id.; see also Auletti Aff. Ex. D.) As a result, Amalgamated suspended plaintiff for two days. (56.1 ¶ 54.)  The letter also specifically stated that "if this situation does not improve disciplinary action will be taken." (Auletti Aff. Ex. D.)  At his deposition, plaintiff could not recall whether he had completed his assigned tasks by the end of his shift but testified that "[c]ommon sense will tell you that how the hell am I going to finish by four when I'm leaving to go to another building . . . [b]ut it's not my fault."  (Forsythe Tr. 333:6-334:6; 56.1 ¶ 55.)  Plaintiff did file a grievance with the Union contesting the suspension.  (56.1 ¶ 57.)  The Union worked with Amalgamated to resolve the issue.  (See id. ¶ 57; India Decl. ¶ 8.)

Within two months, plaintiff received a fourth warning letter for showing up over an hour late to work.  (56.1 ¶ 58; Auletti Aff. Ex. E.)  The letter noted that plaintiff had been warned before about tardiness and advised that "[i]f this situation continues, then disciplinary action will be taken." (56.1 ¶ 58; Auletti Aff. Ex. E.)  At his deposition, plaintiff conceded that he was late for work that day (Forsythe Dep. 298:9-299:22) and came in late "on occasions" (id. 303:3-8).

A number of months after this fourth warning letter, in September 2008, plaintiff received two written warnings for unsatisfactory work performance, including for failing to follow a supervisor's directions and to perform certain assigned tasks. (56.1 ¶ 62; Auletti Aff. Ex. F.)  At his deposition, plaintiff conceded certain conduct and job responsibilities set forth in the warning letters.  (56.1 ¶¶ 63-64.)  Plaintiff did file a grievance regarding the two warning letters but said that he just wanted Local 32BJ to send Amalgamated a letter objecting to the two warnings, not to call his employer.  (Id. ¶ 66-67.)  In October 2008, the Union sent such a letter.  (Id. ¶ 66.)

Within three days of the two September warning letters, plaintiff received another warning letter for his repeated tardiness.  (Id. ¶ 68; Auletti Aff. Ex. G.)  At his deposition, plaintiff conceded that he was late for work at times.  (56.1 ¶69; see also Forsythe Dep. 366:19-367:13.)  Plaintiff did not file a grievance regarding that warning letter.  (56.1 ¶ 71.)

On October 1, 2008, plaintiff received a final warning letter for unsatisfactory work performance.  (Id. ¶ 72.)  That letter stated that he had failed to perform certain assigned tasks and to follow a supervisor's directives.  (Id.; Auletti Aff. Ex. H.)  Plaintiff was told that this was his "final" warning and that if the actions (or inactions) occurred again, disciplinary action would be taken.  (Id.; Auletti Aff. Ex. H.)

At his deposition, plaintiff conceded that he did not perform the relevant task at least some of the time and had failed to follow completely one of his supervisor's directives. (56.1 ¶¶ 73-75.) Plaintiff did not file a grievance with respect to the October warning letter. (Id. ¶ 76.)

In November 2008, plaintiff was suspended a second time for unsatisfactory work performance. (Id. ¶ 77.) He had again failed to perform an assigned task and to follow instructions. (Id.) Plaintiff did file a grievance with respect to that suspension (id. ¶ 78), and India investigated it. During the investigative process, plaintiff threatened one of his supervisors. (See, e.g., id. ¶ 79; Forsythe Dep. 651:18-52:25.)

In December 2008, plaintiff filed a charge of discrimination against Amalgamated with the EEOC, alleging race-based discrimination and retaliation ("2008 EEOC Charge").[2] (56.1 ¶ 164.) There is no evidence in the record that the EEOC found any merit in that charge.

In April 2009, plaintiff received an unsatisfactory and unacceptable work performance review. (56.1 ¶ 83; Auletti Aff. Ex. I.) As a result, he was issued a written warning, noting, in part, that he had been late to work 35 days in the last three

---

[2] In July 2009, after his termination, plaintiff filed a second claim with the EEOC, alleging discrimination based on race and national origin, and retaliation. (Id. ¶ 165.) The EEOC dismissed that charge because it was unable to conclude that "the information obtained" established a violation of the relevant statutes. (Id. ¶ 166.)

months.  (56.1 ¶ 85; Auletti Aff. Ex. I.)  Plaintiff did not
file a grievance relating to that evaluation or warning.  (56.1
¶ 89.)  In July 2009, Amalgamated issued Forsythe another
warning concerning his failure yet again to follow his
supervisor's directives.  (56.1 ¶ 91; Auletti Aff. Ex. K.)
Plaintiff claims that he did not receive this warning.  (56.1
¶ 92.)

On July 23, 2009, plaintiff brought two children to work,
ages 10 and 11, respectively.  (56.1 ¶ 93.)  Plaintiff conceded
that he left the children unattended in the workplace.  (See,
e.g., id. ¶¶ 96, 102.)  After discovering the children
unattended in the employees' locker room and after reviewing the
entirety of plaintiff's employment file, Amalgamated made the
decision to terminate plaintiff's employment.  (Id. ¶¶ 105-108.)
Plaintiff was handed a termination letter on July 26, 2009.
(Id. ¶ 111.)  Plaintiff filed a grievance with Local 32BJ
regarding his termination the next day.  (Id. ¶ 112.)

India investigated the circumstances surrounding
plaintiff's termination.  (Id. ¶¶ 113-120.)  After a thorough
review that included several interviews, India recommended that
the union should not arbitrate the grievance.  (Id. ¶ 120.)
India's determination was based on his investigation and view
that Local 32BJ could not win the arbitration since plaintiff
had admitted that he had brought the children to work and left

them unattended and because of plaintiff's extensive
disciplinary record, which had accumulated in a relatively short
period of time.  (Id.)  India also thought plaintiff's prior
threat to his supervisor would hurt his chances at arbitration.
(Id.; see also id. ¶ 79.)

By letter dated August 12, 2009, Local 32BJ advised
plaintiff of its decision not to arbitrate the dispute.  (Id.
¶ 121.)  Plaintiff appealed that decision to the union's
Grievance Appeal Board ("GAB").  (Id. ¶ 122.)  The GAB held a
hearing on the appeal in October 2009.  (Id. ¶ 123.)  The GAB
determined that the union had made the appropriate decision not
to arbitrate since plaintiff's discharge grievance lacked
sufficient merit.  (Id. ¶ 124.)  The GAB's decision was based on
plaintiff's admission that he had brought the children to work
and left them unattended and plaintiff's extensive disciplinary
history while a relatively short term employee.  (Id.)

At his deposition, plaintiff claimed that one individual,
Pete Zavala, had the objective to terminate plaintiff based on
his race and national origin.  (Id. ¶ 126; Forsythe Dep. 101:20-
102:11.)  In support of that claim, plaintiff stated that Mr.
Zavala told plaintiff that he'd "put [him] on the breadline" and
alleged that Mr. Zavala called him a "wussey" (Forsythe Dep.
98:20-24, 101:24-102:4, 106:17-107:3, 456:4-23.)  Mr. Forsythe
conceded, however, that Mr. Zavala never made any derogatory

remark to him based on his race or national origin.  (Id. ¶ 127;
Forsythe Dep. 462:12-16.)  He also conceded that he never
reported to his other supervisors that Zavala harassed him
because of his race or national origin (56.1 ¶ 140) and never
filed a grievance with Local 32BJ alleging discrimination or
harassment (id. ¶ 156).  Plaintiff also bases his claim
regarding Mr. Zavala's discriminatory animus on an incident in
which Mr. Zavala allegedly pushed a garbage can into plaintiff's
leg.  (See id. ¶ 129.)  A supervisor reviewed video footage of
the incident, however, and confirmed that Zavala had not pushed
the garbage can onto plaintiff's leg.  (Id. ¶ 132.)

        After plaintiff's termination, plaintiff also filed a
charge with the National Labor Relations Board ("NLRB") in
August 2009, asserting that Amalgamated had terminated him for
engaging in protected and concerted activity.  (Id. ¶ 167; Munsky
Aff. Ex. D.)  The NLRB dismissed that charge in October 2009.
(56.1 ¶ 168; Munsky Aff. Ex. D.)

        Plaintiff has not tried to obtain employment since he was
terminated.  (Id. ¶ 172; Forsythe Dep. 554:15-555:4.)

The Instant Actions

        Plaintiff's lawsuit against Amalgamated asserts that he was
the victim of discrimination based on his race and national
origin and retaliation for filing his 2008 EEOC Charge.  At his

deposition, plaintiff also asserted that Amalgamated retaliated against him for seeking assistance from Local 32BJ.  (56.1 ¶ 139.)  With respect to his termination, plaintiff contended at his deposition that Amalgamated did not discipline or terminate other employees who brought their children to work.  (Id. ¶ 141.)  He revealed, however, that he had no knowledge as to whether the Manager, Assistant Manager or Maintenance Director at Amalgamated were aware that those employees purportedly brought children to work and left them unattended.  (Id. ¶ 145.)

In his suit against the union, plaintiff does not allege that Local 32BJ discriminated against him on account of his race or national original – only that it failed to fulfill its obligation of fair representation under the LMRDA, 29 U.S.C. §411 et seq., in particular with regard to the union's refusal to arbitrate his termination, which refusal, plaintiff alleges, was retaliation for his having filed a prior LMRDA lawsuit.  (Id. ¶¶ 154, 157-58.)

## STANDARD OF REVIEW

Summary judgment is proper only "if the evidence, viewed in the light most favorable to the party against whom it is entered, demonstrates that there are no genuine issues of material fact and that the judgment [is] warranted as a matter of law." Barkley v. Penn Yan Central School Dist., No. 09-3975-cv, 2011 WL 3890442, at *1 (2d Cir. Sep. 6, 2011) (internal

quotation marks omitted).  "Although the burden is upon the moving party to demonstrate that no genuine issue respecting any material fact exists, the non-moving party nonetheless must come forward with specific facts showing that there is a genuine issue of material fact for trial."  Id. (internal citation and quotation marks omitted).  It is well-settled that conclusory, speculative or self-serving allegations set forth without evidentiary support are insufficient to create a genuine issue of fact.  See, e.g., id. at *1, 4; Clayborne v. OCE Bus. Servs., 381 Fed. Appx. 32, 34 (2d Cir. 2010); Savitsky v. Mazzella, 210 Fed. Appx. 71, 73 (2d Cir. 2006).

DISCUSSION

Discrimination and Retaliation Claims against Amalgamated

In order to establish a prima facie case of discrimination under Title VII, plaintiff must establish that (1) he is a member of a protected class; (2) he is qualified for his position; (3) he has suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination.  See, e.g., Feingold v. State of New York, 366 F.3d 138, 152 (2d Cir. 2004).

There is no question that plaintiff is a member of a protected class.  There is also no question that he was fired and that termination constitutes an adverse employment action. Plaintiff has failed to raise a triable issue of fact, however,

14

as to whether he was qualified for his position or as to whether
the circumstances of his termination give rise to an inference
of discrimination.  Thus, he has failed to support even a <u>prima
facie</u> case of discrimination based on his race or national
origin.

As set forth in the fact section above, plaintiff's
extensive disciplinary history is uncontested.  Plaintiff,
himself, concedes that he engaged in much of the conduct
described in his numerous warnings and underlying his
termination.  Such a disciplinary record, containing repeated
warnings, evinces an employee who is unable to perform his job
in a satisfactory manner.  As a matter of law, that record is
sufficient to support a finding that plaintiff was unqualified
for his position.  <u>See, e.g.</u>, <u>Aksamit v. 772 Park Avenue Corp.</u>,
No. 00 Civ. 5520, 2003 U.S. Dist. LEXIS 17499, at *8-11
(S.D.N.Y. 2003), <u>aff'd</u>, 2005 U.S. App. LEXIS 7314 (2d Cir.
2005); <u>see generally</u> <u>Meiri v. Dacon</u>, 759 F.2d 989, 995 (2d Cir.
1985) ("[T]he ultimate inquiry is whether an employee's
performance meets his employer's legitimate expectations."
(internal quotation marks omitted)).

In addition, plaintiff has failed to raise a triable issue
of fact connecting his employer's actions, adverse or otherwise,
to his race or national origin.  At his deposition, he conceded
that his supervisor, whose objective it allegedly was to

terminate him based on his race or national origin, never made
any derogatory remarks to him based on his status in a protected
class.  Nor do the neutral remarks he identified (e.g., "I will
have you on the bread line") reflect discriminatory animus.
Plaintiff does not deny that he engaged in the majority of acts
that led to his termination for cause, including bringing two
children to work and leaving them unattended.  In addition, 22
of the 28 porters at Amalgamated are of the same race as
plaintiff; and the two porters hired since his termination are
African American like him.  Finally, Local 32BJ and the GAB both
declined to proceed with Forsythe's termination-related
grievance, further dispelling any inference of discrimination.

     In order to establish a prima facie case of retaliation,
plaintiff must demonstrate a triable issue of fact as to whether
(1) he participated in a protected activity; (2) Amalgamated
knew of that activity; (3) Amalgamated took an employment action
disadvantaging him; and (4) there existed a causal connection
between the protected activity and the adverse action.  See,
e.g., Patane v. Clark, 508 F.3d 106, 115 (2d Cir. 2007).
Amalgamated does not dispute that plaintiff engaged in a
protected activity when he filed his 2008 EEOC charge[3] or that he

---

[3] During his deposition, Forsythe also alleged that Amalgamated retaliated
against him for going to Local 32BJ.  The NLRB, however, has exclusive
jurisdiction over such a claim (and here the NLRB, in fact, dismissed
plaintiff's charge based on the same issue).  See San Diego Bldg. Trades
Council v. Garmon, 359 U.S. 236 (1959).  Additionally, while plaintiff does

suffered an adverse employment action when he was terminated. (Def. Amalgamated's Mem. at 17.)

Plaintiff has failed entirely, however, to raise a triable issue of fact demonstrating a causal connection between the protected activity and his termination. "A plaintiff may assert causal connection through allegations of retaliatory animus, or else by circumstantial evidence, such as close temporal proximity between the protected activity and the retaliatory action." Perry v. State of N.Y. Dep't of Labor, 08 Civ. 4610 (PKC), 2009 U.S. Dist. LEXIS 74006, at *15 (S.D.N.Y. Aug. 20, 2009). Plaintiff has failed to put forth any facts that create an inference of retaliatory animus based on his 2008 EEOC Charge. To the contrary, the record is replete with facts that indicated that plaintiff's lengthy disciplinary history – his demonstrated inability to perform his assigned tasks or to follow the directives of his supervisors – was the reason for his termination. Notably, plaintiff's disciplinary issues started shortly after he was hired and predate his December 2008 charge to the EEOC. Courts have granted summary judgment in such a situation, where a plaintiff was warned about work performance before engaging in protected activity. See Evans v. The New York Botanical Garden, 253 F. Supp. 2d 650, 661, n.9

---

not rely on it for his retaliation claim, his 2009 EEOC Charge post-dated his termination.

(S.D.N.Y. 2003), aff'd, 88 Fed. Appx. 464 (2d Cir. 2004); Ricks
v. Conde Nast Publications, 92 F. Supp. 2d 338, 347 (S.D.N.Y.
2000). The circumstantial evidence is also unavailing for
plaintiff. The passage of more than seven months between the
filing of plaintiff's 2008 EEOC Charge and his firing also
defeats any nexus between the protected activity and the
retaliatory action. See, e.g., Gilford v. City of New York, 03
Civ. 91 (SHS), 2004 U.S. Dist. LEXIS 13150, at *22 (S.D.N.Y.
2004), aff'd, 136 Fed. Appx. 290 (2d Cir. 2005).

Accordingly, plaintiff cannot establish a prima facie case
for either a discrimination or a retaliation claim.

Even if plaintiff had established a prima facie case, the
burden would shift to Amalgamated to articulate legitimate, non-
discriminatory, non-retaliatory reasons for his termination.
See generally St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-
07 (1993). As the facts recited above demonstrate, the record
certainly supports Amalgamated's stated legitimate, non-
discriminatory, non-retaliatory rationale here. See Genao v.
Avon Salon & Spa, 2008 U.S. Dist. LEXIS 3809, at *13-14
(S.D.N.Y. 2008) ("Poor work performance is consistently
recognized in this Circuit as a legitimate, non-discriminatory
reason for termination in the retaliation context."). Moreover,
plaintiff has failed to put forward a single contrary fact that
is not speculative or conclusory.

In light of the foregoing, Amalgamated's motion for summary judgment is GRANTED.

Claims against Local 32BJ

Plaintiff's action against Local 32BJ alleges that the union violated the LMRDA by refusing to arbitrate his termination grievance and in retaliation for his having filed a prior LMRDA action against the union.

Plaintiff's claims against Local 32BJ fail on multiple grounds.  First, plaintiff has failed to raise a triable issue of fact that the Union's decision not to arbitrate his dismissal was unreasonable.  Indeed, the factual record supports the opposite conclusion.  (To the extent that plaintiff asserts any claims related to other alleged failures to act by Local 32BJ, such claims would be time-barred, and any claim related to the inclusion of Amalgamated superintendents in the bargaining unit cannot withstand summary judgment.)[4]  Second, with respect to

---

[4] At his deposition, plaintiff conceded that he is not asserting any claims against the union concerning how it represented him with respect to his disciplinary warnings or suspensions. (56.1 ¶ 159.)  Plaintiff did, however, make some stray comments suggesting that Local 32BJ failed to insure that certain materials were removed from his personnel file in violation of a purported agreement made with Amalgamated in October 2008.  (See id. ¶¶ 134-35.) It is unclear whether plaintiff is suggesting that that purported agreement provides a separate basis for a claim against the union, apart from his termination grievance.  Regardless, the law is clear that any claims that accrued more than six months prior to the filing of an action are time-barred.  DelCostello v. Int' Bhd. of Teamsters, 462 U.S. 151, 169-71 (1983). The claims regarding removal of certain material from Mr. Forsythe's file arose, at least, prior to his termination in July 2009 - more than six months before he filed his action on March 4, 2010.

To the extent Forsythe is also asserting a claim that Local 32BJ breached its duty by permitting Amalgamated Superintendents to be in the bargaining unit

plaintiff's retaliation claim, he has not put forward a single fact connecting the union's decision not to arbitrate his termination to his prior LMRDA lawsuit.

1. *Duty of Fair Representation*

To prevail on a claim for breach of a union's duty to fairly represent a member, the evidence must show that the union's conduct was "arbitrary, discriminatory, or in bad faith." Airline Pilots Assoc., Int'l Union v. O'Neill, 499 U.S. 65, 71 (1991) (internal quotation marks omitted). The member must also demonstrate that the union's conduct was in breach of its CBA and that there was a causal connection between that conduct and the plaintiff's injuries. See, e.g., DelCostello, 464 U.S. at 165; White v. White Rose Food, 237 F.3d 174, 178-79 (2d Cir. 2001). With respect to a union's decision not to arbitrate, the same framework applies – a member does not have an absolute right to have his or her union arbitrate a grievance. See Vaca v. Sipes, 386 U.S. 171, 191 (1967). The law is clear that a decision not to arbitrate "a bad case" does not give rise to an inference of arbitrariness, discrimination

---

and/or to issue discipline, that claim is without merit. (See 2d Am. Compl. 5.) There is no legal prohibition against supervisors belonging to a union or issuing discipline while holding such membership. See 29 U.S.C. § 164(a); Power Piping Co., 291 N.L.R.B. 494, 497 (1988). More importantly, plaintiff has offered no evidence that Local 32BJ was inappropriately influenced by the superintendents also being part of the union membership. See Carrion v. Local 32BJ-32J SEIU, 03 Civ. 1896 (THK), 2005 U.S. Dist. LEXIS 4417 (S.D.N.Y. Mar. 21, 2005).

or bad faith.  See Wozniak v. U.A.W., Local 897, 842 F.2d 633, 636 (2d Cir. 1988).

Plaintiff was terminated on July 23, 2009.  He filed his grievance with Local 32BJ on July 27, 2009.  As set forth in the fact section above, Mr. India, as Local 32BJ's grievance representative, conducted a thorough investigation of the circumstances surrounding that termination.  Plaintiff has admitted that he brought children to work and left them unattended.  Additionally, Mr. Forsythe's extensive disciplinary history in his relatively short employment with Amalgamated was clearly set forth in his file.  Local 32BJ was entitled to determine whether or not to arbitrate plaintiff's grievance based on its views as to the merits of the dispute.  See Vaca, 386 U.S. at 191; Wozniak, 842 F.2d at 636.  The uncontested facts indicated that the union would lose the arbitration.  Thus, the union, based on Mr. India's recommendation, made the reasonable determination not to arbitrate.

Plaintiff has not raised a triable question of fact to the contrary.  As noted above, plaintiff had no knowledge of whether management was aware that - as plaintiff contended at his deposition - other employees brought children to work and left them unattended.  (56.1 ¶ 145.)  He also failed to provide Mr. India with the names of any co-workers, who purportedly engaged in such conduct.  (Id. ¶ 119; India Decl. ¶¶ 15, 21.)  Morevoer,

further supporting the reasonableness of Mr. India's
recommendation, is the independent decision of the GAB, after a
hearing on plaintiff's appeal, that plaintiff's grievance lacked
sufficient merit to arbitrate.  (56.1 ¶¶ 122-24.)

2. *Retaliation*

Plaintiff's retaliation claim is based on an assertion that
Local 32BJ decided not to arbitrate his termination grievance
because of a lawsuit he had brought against the union in 2009
relating to his prior employment with AlliedBarton.  (That
action was dismissed at the pleadings stage.  (Docket No. 38, 09
Civ. 8469 (SJS)(RLE).))  It is uncontested, however, that Mr.
India, who conducted the investigation regarding the
circumstances of plaintiff's termination by Amalgamated and made
the recommendation not to arbitrate, was not aware of that prior
lawsuit at the time he made his recommendation.  (56.1 ¶ 154.)
Moreover, plaintiff has not put forward a single fact suggesting
that the GAB made its decision on plaintiff's appeal of the
initial determination in any way, based on the prior lawsuit.
Accordingly, plaintiff has not raised a triable issue of fact
supporting his retaliation claim.

CONCLUSION

For the reasons set forth above, the motions for summary
judgment by defendants Amalgamated and Local 32BJ are GRANTED.

The Clerk of the Court is directed to terminate the motions at Docket Numbers 20 and 27 in 10 Civ. 2549 and 29 and 49 in 10 Civ. 4609, and to close those cases.

The Court also certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal.

In addition, the Court notes that plaintiff has filed a number of other cases with this Court, including actions filed previously to the instant one. (See Forsythe v. NYC Dep't of Citywide Admin. Servs., 08-CV-10151 (dismissed at summary judgment); Forsythe v. Local 32BJ, et al., 09-CV-7243 (dismissed at the pleadings stage); Forsythe v. AlliedBarton Security Servs., et al., 09-CV-7633 (dismissed at the pleadings stage); Forsythe v. AlliedBarton Security Servs., et al., 09-CV-8414 (dismissed under Rule 4(m) for untimely service); Forsythe v. Local 32BJ, 09-CV-8469 (dismissed at the pleadings stage); Forsythe v. Local 32BJ, et al., 10-CV-8557 (dismissed at the pleadings stage); Forsythe v. Local 32BJ, 11-CV-4169 (dismissed at the pleadings stage). In light of plaintiff's prior-filed actions, this Court finds that plaintiff should have been aware of the scope of the elements of his claim when he filed this action. See Sledge v. Kooi, 564 F.3d 105, 109-110 (2d Cir. 2009) (discussing circumstances where frequent pro se litigants

may be charged with knowledge of particular legal requirements).
Accordingly, plaintiff is warned – and on notice – that further
duplicative or frivolous litigation in this Court will result in
an order barring him from filing new actions in forma pauperis
without prior permission.  See 28 U.S.C. § 1651; see also Moates
v. Barkley, 147 F.3d 207, 208 (2d Cir. 1998) (requiring that a
litigant be given notice and an opportunity to be heard because
a district court imposes a filing injunction on him).

SO ORDERED

Dated:     New York, New York
           April 27, 2012

                         _____
                              KATHERINE B. FORREST
                         United States District Judge